PD1396-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/20/2015 4:02:24 PM
Accepted 5/26/2015 8:28:13 AM
ABEL ACOSTA
CLERK

LAW OFFICES

GOLDSTEIN, GOLDSTEIN AND HILLEY

310 S. ST. MARY'S STREET, SUITE 2900

SAN ANTONIO, TEXAS 78205-3117

ELI GOLDSTEIN
(1910-1998)
GERALD H. GOLDSTEIN
LICENSED IN TEXAS AND COLORADO
VAN G. HILLEY
CYNTHIA HUJAR ORR
DONALD H. FLANARY, III

AREA CODE 210
TELEPHONE 226-1463

AREA CODE 210
FACSIMILE 226-8367

May 20, 2015

FILED IN
COURT OF CRIMINAL APPEALS

May 26, 2015

ABEL ACOSTA, CLERK

Court of Criminal Appeals
Attn: Abel Acosta, Clerk of the Court
Supreme Court Building
201 West 14th Street, Room 106
Austin, Texas 78701

RE: *Jon Thomas Ford vs. State of Texas*, Cause No. PD-1396-14 in the Court of Criminal Appeals, Austin, Texas.

Dear Mr. Acosta,

Undersigned counsel for Jon Thomas Ford, Appellant, respectfully notifies the judges of this Honorable Court of the following record citations and authorities argued today in regard to the above entitled and numbered cause.

The Texas Constitutional challenge to the applications for stored communications is at Volume 4, page 13 of the record.

> "That application and order does not comply with Texas law. But more importantly, I think, is that the Supreme Court recognizes that in the emerging field of electronics, the rapidly developing field of electronics, there are many things that – much information that is stored that should be confidential and should require an adequate warrant in order to obtain." 4 RR 13.

Judge Alcala asked whether the location tracking available from one's cell phone of another on the same account was similar to Historical Cell Tower data. It is different in that it indicates the actual location of the other phone on the account using an internal GPS location signal that the account holder accesses through username and password on the account. It is private information so that not just anyone can track the location of someone's, to use an example, daughter. Because it is done within an account and with a user name and password on that account only, it maintains one's expectation of privacy in their locations. This username and password keeps the information private and outside of public access. This is a reasonable expectation of privacy that society actively protects.

The Court inquired whether the applications for the stored communications included content. The applications requested content of text messages and of the telephone and related records, which would include emails. The applications asked for content. 1 SCR 187-199. Mr. Brandon conceded this point for the State at argument. Therefore, regardless of whether a statute is in place to prevent the production of some content now, the matter is separately protected by Article 1, Section 9 of the Texas Constitution and the Fourth Amendment to the United States

Constitution. The dissent in the Eleventh Circuit in *Davis*, explains that the court's expansion of the third-party record doctrine there, would lead to unfettered access to our private content communication. *United States v. Davis*, No. 12-12928, 2015 WL2058977 (11th Cir. May 5, 2015):

> "But such an expansive application of the third-party doctrine would allow the government warrantless access not only to where we are at any given time, but also to whom we send e-mails, our search-engine histories, our online dating and shopping records, and by logical extension, our entire online personas." Judge Martin dissenting, slip op at page 29.

The *Davis* majority also found that Justice Sotomayor did not reject the third-party record doctrine with regard to digital information. *United States v. Davis*, No. 12-12928, 2015 WL2058977, slip op at 14 (11th Cir. May 5, 2015)[Justice Sotomayor does not answer the question whether the third-part record doctrine should apply]. However, Justice Sotomayor did reject its application in the context of digital data. *United States v. Jones*, 132 S.Ct. 945, 957 (2012):

> "This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks. People disclose the phone numbers that they dial or text to their cellular providers; the URLs that they visit and the e-mail addresses with which they correspond to their internet service providers; and the books, groceries, and medications they purchase to online retailers. Perhaps, as Justice ALITO notes, some people may find the 'tradeoff' of privacy for convenience 'worthwhile,' or come to accept this 'diminution of privacy' as 'inevitable,' *post*, at 962, and perhaps not. I for one doubt that people would accept without complaint the warrantless disclosure to the Government of a list of every Web site they had visited in the last week, or month, or year. But whatever the societal expectations, they can attain constitutionally protected status only if our Fourth Amendment jurisprudence ceases to treat secrecy as a prerequisite for privacy. I would not assume that all information voluntarily disclosed to some member of the public for a limited purpose is, for that reason alone, disentitled to Fourth Amendment protection." *Jones* at 957 (Sotomayor, J., concurring).

The *Davis* case has a majority opinion, three concurrences and a dissent. It is hotly contested not final, is subject to rehearing. Defense counsel in the case, David Marcus, is filing a writ of certiorari to the United States Supreme Court. Just as this Court, in *Granville*, reached the correct conclusion about searches of such data on a cell phone in the possession of police, in their property room, prior to the Supreme Court doing so, this Court is positioned to take the lead concerning such pervasive invasions of every aspect of our personal lives presented here. *See: State v. Granville*, No. PD-1095-12 (Tex. Crim. App. Feb. 26, 2014).

The third-party record doctrine applies only to information which is voluntarily conveyed.

> "This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties. In *Miller*, for example, the Court held that a bank depositor has no 'legitimate 'expectation of privacy;' in financial information 'voluntarily conveyed to … banks and exposed to their employees in the

ordinary course of business.'" *Smith v. Maryland*, 442 U.S. 735, 744 (1979) (citing *United States v. Miller*, 425 U.S. at 422).

"This Court has held repeatedly that the *Fourth Amendment* does not prohibit the obtaining of information released to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the (sic) their party will not be betrayed." *Smith*, 442 U.S. at 744 (quoting *United States v. Miller*, 425 U.S. at 443).

"When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business. In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed. The switching equipment that processed those numbers is merely the modern counterpart of the operator who, in an earlier day, personally completed calls for the subscriber." *Smith*, 442 U.S. at 744.

"Regardless of the phone company's election, petitioner voluntarily conveyed to it information that it had facilities for recording and that it was free to record. In these circumstances, petitioner assumed the risk that the information would be divulged to police." *Smith*, 442 U.S. at 745.

Here, all of the information used to sustain the conviction was from involuntary passive activity on the phone caused by others or apps. *See: Ford v. State*, 944 S.W.3d 171, 190 n.2 (Tex. App. San Antonio 2014).

The State countered that it need not be concerned with the third-party record doctrine because these were AT&T's business records. But they were not on two counts. They were the information of the type mentioned in *Granville*.

"But courts commonly find that a person has a legitimate expectation of privacy in the contents of his cell phone because of its 'ability to store large amounts of private data' both in the cell phone itself and by accessing remote services. This data may involve the most intimate details of a person's individual life, including text messages, emails, banking, medical, or credit card information, pictures, and videos. A cell phone is unlike other containers as it can receive, store, and transmit an almost unlimited amount of private information." *State v. Granville*, 423 S.W. 3d 399, 408 (Tex. Crim. App. 2013) (internal citations omitted).

And were not business records, but the compilation of data and information that was not used for billing or general distribution and coupled with digging and cross-matching to provide a presentation for the jury. 8 RR 98. Mr. DeGuerin had subpoenaed the information and was unable to obtain it. 1 SuppCR 168.

The Second Circuit case of *ACLU v. Clapper*, 2015 App. LEXIS 7531 (2d. Cir. 2015), discusses the information contained in the contents of cell phone metadata. It states that cell phone metadata includes, details about phone calls, phone numbers called and received, the length of a call, information about the routing of a call through the telephone network, and information

3

about a caller's general location. *Id.* at 7-8. That is the same type of information gathered by law enforcement in this case.

*Clapper* goes on to say that the fact that telephone metadata does not directly reveal content does not lead to the conclusion that it does not reveal content. Rather, the Court states that metadata can reveal ... "'information that could traditionally only be obtained by examining the contents of communications' and that is therefore 'often a proxy for content.'" *Id.* at p. 8 (*quoting* Joint App' X50 [Declaration of Professor Edward W. Felten]).

> "For example, a call to a single purpose telephone number such as a hot line might reveal that an individual is: a victim of domestic violence or rape; a veteran; suffering from an addiction of one type or another; contemplating suicide; or reporting a crime." *ACLU v. Clapper*, 2015 App. LEXIS 7531 (2d Cir. 2015).

Here, Ford's frequent communications with Allan Tarver revealed the closer nature of their relationship. For example, they revealed, according to the State's expert, that he traveled from someone's party (Mary Minor's) to his home. That he was using a Blackberry Curve, and that he did not answer a call or a text. 8 RR 118-170.

The Supreme Court held in *Riley v. California* that the third-party doctrine does not apply when more than phone numbers are collected. *Riley v. California*, 134 S.Ct. 2473, 2492-93 (2014). In *Riley*, the Court held that *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), does not apply to collection of information from a cell phone that goes beyond that of gathering phone numbers. *Riley* distinguished itself from *Smith v. Maryland* because, rather than merely collecting phone numbers by means of a pen register like law enforcement in *Smith v. Maryland*, law enforcement officials collected call logs from the cell phone in *Riley*. The Court state, "call logs typically contain more than just phone numbers; they include any identifying information that an individual might add...." *Riley*, 134 S.Ct. at 2493. *Riley* then concluded that when the collection of information includes identifying information that an individual might add, a *Fourth Amendment* search is conducted. *Riley v. California* 124 S.Ct. at 2942-43.

Judge Alcala inquired about the *Richardson* case to which counsel referred. The case is *Richardson v. State*, 865 S.W.2d 944 (Tex. Crim. App. 1993)[agreeing with State's finding that the constitutions recognize a privacy interest in the phone numbers dialed into a phone].

Thank you for your attention to this matter. Please do not hesitate to contact my office if you have any questions.

Sincerely,

*/s/ Cynthia E. Orr*

Cynthia E. Orr
Goldstein, Goldstein & Hilley

cc: ADA Jay Brandon

4